IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | § § § | |
| v. | § § | Crim. No. 4:22-cr-110-JDK-AGD-19 |
| **JONATHON JAMES SPENCER (19)** | § § § | |

## MEMORANDUM OPINION AND ORDER

On April 25, 2024, Pretrial Services filed the Petition for Action on Conditions of Pretrial Release (the "Petition") (Dkt. 570). Upon consideration, the Court finds Defendant Jonathon James Spencer's ("Defendant") pretrial release should be revoked and Defendant should be **DETAINED** pending trial.

### I. BACKGROUND

**A. Procedural History**

On May 12, 2022, Defendant was charged in an indictment (the "First Indictment") (Dkt. 1) with violating 18 U.S.C. § 1349 (Conspiracy to Commit Wire Fraud). *See* Dkt. 1 at 5. On May 17, 2022, Defendant was arrested, and on May 18, 2022, Defendant was arraigned and made an initial appearance before the undersigned. *See* Docket Entry dated May 17, 2022; Dkt. 58. During the May 18, 2022, arraignment, the Government advised the Court that it was seeking to detain Defendant. *See* Dkt. 58. The Government later moved to withdraw its motion for detention and Defendant was released on conditions of pretrial release in May 2022. *See* Dkts. 116; 128.

On April 17, 2024, Defendant was charged in a second indictment (the "Second Indictment") with violating 18 U.S.C. § 1349 (Conspiracy to Commit Wire Fraud) and 18 U.S.C. § 1956(h) (Conspiracy to Commit Money Laundering). *United States v. Spencer* (*Spencer II*),

1

4:24-cr-95, Dkt. 1 at 2–7. On April 25, 2024, Defendant was arrested, arraigned, and made an initial appearance before Magistrate Judge Aileen Goldman Durrett for the Second Indictment. *Spencer II*, Minute Entry dated April 25, 2024. During the April 25, 2024, arraignment, the Government advised the Court that it was seeking to detain Defendant. *See Spencer II*, Minute Entry dated April 25, 2024.

On April 25, 2024, Pretrial Services filed the Petition (Dkt. 570) relating to the First Indictment, alleging that Defendant violated the following conditions of pretrial release:

> (1) The defendant must not violate federal, state, or local law while on release.
>
> (7)(t) not himself/herself or through others, open new financial accounts, lines of credit, or make any purchases or leases exceeding $5,000 in value without approval of pretrial services.

Dkt. 570 at 2. The Petition (Dkt. 570) alleges that Defendant violated the foregoing conditions as follows:

> On April 25, 2024, . . . [D]efendant was arrested pursuant to [the Second] Indictment charging violation[s] of 18 U.S.C. § 1349 - Conspiracy to Commit Wire Fraud; and 18 U.S.C. § 1956(h) - Conspiracy to Commit Monday Laundering in Cause No. 4:24C0095 -1 [sic] out of the Eastern District of Texas, Sherman Division. The defendant is scheduled to make an Initial Appearance before U.S. Magistrate Aileen Goldman Durrett on April 25, 2024.

*Id.*

On May 1, 2024, Defendant made an initial appearance before the undersigned on the Petition (Dkt. 570). *See* Minute Entry dated May 1, 2024. Following the initial appearance, the Court held the preliminary and detention hearing on the Petition (Dkt. 570) and the detention hearing on the motion to detain for the Second Indictment (the "First Hearing"), wherein the Government was represented by Assistant United States Attorney Sean Taylor and Defendant was represented by Mr. Eric Durojaiye. *See id.* At the conclusion of the First Hearing, the undersigned informed the parties that the Court would take the matter of detention under advisement. *See id.*

On May 16, 2024, the Government submitted a Notice of New Evidence, wherein the Government represented that evidence of an additional violation of Defendant's pretrial conditions arising from the First Indictment was uncovered. Dkt. 611 at 1. Accordingly, the Court scheduled a second hearing (the "Second Hearing") concerning the revocation of Defendant's pre-trial release. On May 30, 2024, the Court held the Second Hearing, wherein the Government was represented by Assistant United States Attorney Sean Taylor and Defendant was represented by Mr. Eric Durojaiye. *See* Minute Entry dated May 30, 2024.

**B.     The First Hearing**

During the First Hearing, Federal Bureau of Investigation ("FBI") Special Agent Kristen Brown ("Agent Brown") and United States Probation Officer Tonisha Brown ("Officer Brown") testified regarding Defendant's activities leading to the Petition (Dkt. 570) and the Second Indictment.

   **1.     Violations of Federal Law**

Regarding the violations of federal law resulting in the Second Indictment, Agent Brown testified that Defendant participated in a multi-million-dollar conspiracy to solicit investors to invest in foreign exchange ("forex") trading. According to Agent Brown, the alleged scheme began in 2018 and continued through the date of the Second Indictment. The investment fraud scheme allegedly involved at least fifty potential victims and at least $7.5 million invested with Defendant and his co-conspirators. Agent Brown testified that Defendant and his co-conspirators sent over $1 million of investor money overseas, including to the following locations: Lebanon, Canada, London, Cypress, and Australia.

Agent Brown testified that to perpetuate this scheme, Defendant held himself out to be an experienced and successful forex trader with a high net worth, told investors that he could trade

their money in regulated forex trading markets, and represented that investors could make a significant return on their investment over the market standard. One of the investors informed Agent Brown that he decided to invest with Defendant based on Defendant's representations that he was a successful forex trader and had a net worth of at least a hundred million dollars. Agent Brown testified that Defendant represented the value of his investment portfolio primarily through personal statements and his luxurious lifestyle—Defendant drove luxury vehicles and had other luxury assets.

Agent Brown testified that Defendant represented to investors that he would take their investment money, transfer it to one of his companies, and from there, would trade the money in the forex market. Defendant allegedly owns several companies and many bank accounts that he used in furthering the alleged scheme. Agent Brown testified that in her experience, the purpose of multiple bank accounts is to obfuscate law enforcement because with multiple bank accounts, it is more difficult for the banks themselves, as well as law enforcement, to see the purpose of the transfers of money entering and exiting the accounts. According to Agent Brown, concealment of the nature of the funds is an important part of the alleged scheme.

Agent Brown verified how Defendant spent the investment money that he received by tracing the funds through Defendant's bank accounts and interviewing six alleged victims and co-conspirators. Agent Brown testified that the analysis of Defendant's bank accounts revealed that the payments made to investors from Defendant and Co-Defendant Toni Aoun ("Aoun") were Ponzi payments rather than payments for a return on their investment. Agent Brown testified that she interviewed Aoun following his arrest, wherein Aoun admitted that he and Defendant took investor money and, after representing that the money would be invested in forex trading, knowingly spent it on themselves to support their lifestyles.

Agent Brown also interviewed RS, an alleged victim in the forex trading scheme. Agent Brown testified that Defendant solicited RS as an investor. RS invested $1.1 million with the understanding that 100% of his money would be invested by Defendant in forex trading. Agent Brown testified that the bank records reflect that money invested by RS was used for other purposes, including: making payments to co-conspirators, attempting to purchase real estate for Defendant, purchasing a vehicle for Defendant, making other personal expenditures for Defendant, and sending money out of the country. Agent Brown further testified that sometime after RS invested in forex trading with Defendant, Defendant approached RS with the proposition that RS become a partner in Defendant's investment business. After RS observed how Defendant was managing the investments, he was not comfortable in joining as a business partner. RS attempted to withdraw his money but received numerous excuses from Defendant as to why it could not be withdrawn. Ultimately, RS never received any of his money and stopped investing with Defendant.

Agent Brown testified that another investor, DD, informed her that she provided Defendant with $98,000 to invest in forex trading. Agent Brown testified that DD provided this money to Defendant with the understanding that 100% of the money would be invested in forex trading and any dividends received would be reinvested in forex trading. Agent Brown testified that the bank records show that the money was received into Defendant's bank account and then used to make five Ponzi payments to previous investors, totaling approximately $85,000.

Agent Brown testified that some of the alleged victims told her that they had been contacted by Defendant after her initial interview with them. Agent Brown testified that she spoke to RS at the beginning of April, and RS told her that shortly after she interviewed DD, RS received a phone call from Defendant. RS told Agent Brown that during that phone call, Defendant asked why RS and he were not in touch anymore; RS told Defendant that it was because Defendant stole from

5

him, to which Defendant replied that he would see what he could do to get RS his money back. Agent Brown testified that she believed Defendant knew she was investigating him for forex trading fraud based on Defendant's actions in reaching out to the investors that she had contacted regarding the investigation. Agent Brown testified that if Defendant were to be released on bond, she believed that Defendant would continue to reach out to the alleged victims and solicit new investors.

      2.      **Violations of Pretrial Release Conditions**

Regarding Defendant's alleged violations of his pretrial release conditions relating to the First Indictment, Agent Brown testified that Defendant opened two new bank accounts without prior approval of pretrial services. Agent Brown testified that Defendant added himself to his wife's, Ashleigh Spencer ("Mrs. Spencer"), Ally Bank account (the "Ally Bank Account") as a joint account holder in March 2023. Agent Brown further testified that Defendant opened a new bank account at Bank of America (the "Bank of America Account") under the name of "The Good Life Tribe LLC" in March 2023; Defendant is a signatory on the Bank of America Account. Agent Brown testified that Defendant did not ask for approval from pretrial services to open the Bank of America Account. According to Agent Brown, she learned that the Bank of America Account had been opened by Defendant when she was investigating Defendant pursuant to the Second Indictment. Agent Brown testified that "The Good Life Tribe LLC" was previously known as "JJ Spencer LLC" doing business as "Rhino Capital Management LLC." Rhino Capital Management LLC is the company through which Defendant allegedly solicited investors for his investment fraud scheme.

Agent Brown testified that she analyzed the transactions in both the Ally Bank Account and the Bank of America Account and observed the following: cryptocurrency originating from

the British Virgin Islands was deposited into the Ally Bank Account and transferred by check to the Bank of America Account. From the Bank of America Account, Defendant used the money to pay for personal expenditures such as credit card bills. Agent Brown testified that this movement of money indicated an attempt by Defendant to hide the source of the money.

Agent Brown also testified regarding Defendant's violations of pretrial release. Officer Brown testified that Defendant inquired on October 6, 2022, about joining his wife's existing bank account. Officer Brown testified that on October 13, 2022, Defendant's supervising officer gave Defendant permission to join the existing account with instructions to provide him with documentation containing the name of the bank and the account number once he joined the account. Officer Brown testified that there is no record that Defendant provided this documentation to his supervising officer as instructed. Officer Brown further testified that Defendant did not obtain permission to open a bank account in his business's name. Officer Brown testified that opening a bank account in his business's name is a violation of the conditions of his pretrial release relating to the First Indictment.

Mrs. Spencer testified regarding the Ally Bank Account. Mrs. Spencer testified that the joint account was a bank account that she already possessed before Defendant was added to the account in October 2022. Mrs. Spencer testified that she wanted to add Defendant to the Ally Bank Account because their previous Chase bank account was closed, and they wanted Defendant to be able to receive the payments for his job as a strength and conditioning coach by direct deposit. Mrs. Spencer testified that Defendant did not use the joint bank account for his trading business.

**C.     The Second Hearing**

During the Second Hearing, Agent Brown testified regarding the investigation of a third bank account. Agent Brown testified that after the First Hearing, she received bank records from

Regions Bank showing that Defendant and Mrs. Spencer opened a bank account (the "Regions Bank Account") in June 2023 in the name of a trust, the "Rhino Spendthrift Trust." Agent Brown testified that Defendant and Mrs. Spencer were listed as co-trustees of the Rhino Spendthrift Trust. Agent Brown testified that she spoke to the individual that created the trust on Defendant's behalf, Cedric Brown ("Mr. Brown"). Mr. Brown informed Agent Brown that the trust is a spendthrift irrevocable trust, the purpose of which is to aid individuals in maintaining privacy, becoming lawsuit proof, safeguarding assets, and deferring taxes. Mr. Brown further stated that assets located within a spendthrift irrevocable trust are protected against restitution ordered against the individual. Agent Brown testified that Defendant attempted to transfer his BMW and his wife's Land Rover into the Rhino Spendthrift Trust.

## II.    LEGAL STANDARDS

The Bail Reform Act, 18 U.S.C. § 3142, governs the release and detention of defendants awaiting trial. Section 3142(g) provides that courts shall consider the following factors in determining whether a person poses a flight risk or a danger to the community: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence; (3) the defendant's history and characteristics, including, among other things, his family ties, length of residence in the community, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release. 18 U.S.C. § 3142(g); *see also United States v. Acosta-Leyva*, 751 F. App'x 594, 595 (5th Cir. 2019) (per curiam).

"A person who has been released under section 3142 of this title, and who has violated a condition of his release, is subject to a revocation of release, an order of detention, and a prosecution for contempt of court." 18 U.S.C. § 3148(a). Section 3148(b) provides:

> The Judicial officer shall enter an order of revocation and detention if, after a hearing, the judicial officer—
>
> (1) finds that there is—
>
>     (A) probable cause to believe that the person has committed a Federal, State, or local crime while on release; or
>
>     (B) clear and convincing evidence that the person has violated any other condition of release; and
>
> (2) finds that—
>
>     (A) based on the factors set forth in section 3142(g) of this title, there is no condition or combination of conditions of release that will assure that the person will not flee or pose a danger to the safety of any other person or the community; or
>
>     (B) the person is unlikely to abide by any condition or combination of conditions of release.

18 U.S.C. § 3148(b). "Under the statute, a finding of probable cause under § 3148(b)(1)(A) carries with it a rebuttable presumption that no condition or combination of conditions will assure that the person will not pose a danger to the safety of any other person or the community." *United States v. Aron*, 904 F.2d 221, 224 (5th Cir. 1990); *see also United States v. Moreno*, 857 F.3d 723, 725–27 (5th Cir. 2017). Under Section 3148(b)(2)(B), a "district court's finding that a defendant will not abide by any conditions of release may be established by a preponderance of the evidence." *Aron*, 904 F.2d at 224 (citing *United States v. Gotti*, 794 F.2d 773, 778 (2d Cir. 1986)); *see also United States v. Minor*, 204 F. App'x 453, 455 (5th Cir. 2006).

### III.  ANALYSIS

The Court finds there is probable cause to believe Defendant opened two new financial accounts, the Bank of America Account and the Regions Bank Account, without approval of

pretrial services, in violation of Condition (7)(t).[1] The Court further finds Defendant has not rebutted the presumption that no condition or combination of conditions will assure that he will not pose a danger to the safety of any other person or the community. Furthermore, the Court finds by a preponderance of the evidence that Defendant will not abide by any condition or combination of conditions of release.

On May 23, 2022, Defendant appeared for a status conference where the Government moved to withdraw their motion for detention, the Court read the conditions of pretrial release into the record, Defendant reviewed the conditions with his attorney and was provided with a copy of the pretrial conditions, and Defendant signed the order, which states as follows: "I acknowledge that I am the defendant in this case and that I am aware of the conditions of release. I promise to obey all conditions of release . . . . I am aware of the penalties and sanctions set forth above." Dkts. 115; 128 at 4. The Court confirmed that Defendant understood each of the conditions set forth in the order and warned Defendant of the consequences for failure to abide by the pretrial conditions stating:

> If you violate any conditions of your release, a warrant for your arrest may be issued, you may be jailed until trial, and you may be prosecuted for contempt of court. Committing a crime while on release may lead to more severe punishment than you would otherwise receive if you committed that same crime at any other time. It is a crime to try to influence, threaten, retaliate against, or in any way affect any person that is associated with this case.

Dkt. 115. After Defendant affirmed that he understood his conditions of pretrial release, agreed to abide by them, and affirmed his understanding of the consequences for failure to abide by his conditions, Defendant was released on conditions of pretrial release. *Id.*

---

[1] Although Defendant did not comply with the pretrial services officer's request to provide the Ally Bank Account information after joining the account, Defendant did seek and obtain approval from pretrial services before joining the account as a joint account holder. Thus, the Court does not find that Defendant joined the Ally Bank Account in violation of Condition (7)(t).

While on pretrial release, Defendant opened two bank accounts—the Bank of America Account and the Regions Bank Account. Defendant opened the Bank of America Account in March 2023, under the name of The Good Life Tribe LLC, and was a signatory on the account. Agent Brown testified that The Good Life Tribe LLC is Defendant's business and is associated with Defendant's forex trading activities for which Defendant has been indicted in the Second Indictment. Defendant opened the Regions Bank Account in June 2023, under the name of Rhino Spendthrift Trust. Agent Brown testified that an irrevocable spendthrift trust account can be used to hide assets from restitution. Further, both accounts were opened after Defendant was released on pretrial conditions, which included the condition that Defendant "shall not, himself/herself or through others, open new financial accounts . . . without approval of pretrial services." *See* Dkt. 128 at 3. Defendant did not obtain approval before, or notify pretrial services after, opening either the Bank of America Account or the Regions Bank Account. Rather, the bank accounts were only discovered through the FBI's investigation of Defendant for his involvement in the forex trading scheme.

Defendant's actions demonstrate that Defendant will not comply with conditions of release. Moreover, the purpose of the two bank accounts demonstrates that if Defendant was to be released, he will likely continue to engage in criminal activity to the community's detriment. Accordingly, the Court finds there is probable cause to believe that Defendant has opened two new financial accounts without approval of pretrial services in violation of Condition (7)(t). The Court further finds Defendant has not rebutted the presumption that no condition or combination of conditions will assure that he will not pose a danger to the safety of any other person or the community. Finally, the Court finds by a preponderance of the evidence that Defendant will not abide by any condition or combination of conditions of release.

## IV. CONCLUSION

For the reasons stated above, the Court concludes that the record in this case supports Defendant's pretrial detention. Accordingly, the Court finds Defendant's pretrial release should be revoked and Defendant should be **DETAINED** pending trial.[2]

**So ORDERED and SIGNED this 11th day of June, 2024.**

_____
KIMBERLY C. PRIEST JOHNSON
UNITED STATES MAGISTRATE JUDGE

---

[2] In light of the Court's decision to revoke Defendant's pretrial release and order that he be detained pending trial, the Court denied as moot the Government's motion to detain Defendant related to the Second Indictment. *See Spencer II*, Minute Entry dated May 30, 2024.